FILED
8/28/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JH

RECEIVED
7/13/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**29CV4113
JUDGE ALONSO
MAGISTRATE JUDGE GILBERT**

| | | |
|---|---|---|
| ASHOK ARORA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| Diversified Consultants, Inc., | ) | |
| T-Mobile USA, Inc., | ) | |
| John Does 1 through 50, | ) | |
| Defendants | ) | |

<u>**COMPLAINT**</u>

**INTRODUCTION**

1.     Plaintiff Ashok Arora brings this individual action against defendants Diversified

Consultants, Inc. ("DCI"), T-Mobile USA, Inc., and John Does 1 through 50 for violations of the

Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), Racketeer Influenced and

Corrupt Organizations Act 18 U.S.C. §1961 et seq. ("RICO"), Intrusion upon Seclusion, and

Conspiracy.

**JURISDICTION AND VENUE**

2.     This court has subject matter jurisdiction under 28 U.S.C. §1331, 28 U.S.C.

§1332, 47 U.S.C. § 227 (TCPA), 18 U.S.C. § 1964(c) and supplemental jurisdiction under 28

U.S.C. §1367.

3.     The venue and personal jurisdiction are proper because:

(A)   Plaintiff resides in the Northern District of Illinois,

(B)   Defendant DCI is a foreign corporation that conducts business in the State of Illinois and in this district.

(C)   Defendant T-Mobile is a foreign corporation that conducts business in the State of Illinois and in this district.

(D)   The conduct of DCI and T-Mobile giving rise to this complaint occurred within the state of Illinois and in this district.

**PARTIES**

4.   Plaintiff is an individual who resides in the Northern District of Illinois.

5.   Defendant DCI is a FLORIDA corporation with its headquarters located in Jacksonville, Florida.

6.   Defendant DCI is licensed as a collection agency by the State of Illinois with license number 017021502.

7.   Defendant DCI conducts business in the State of Illinois and in this district via telephone and mail.

8.   Defendant T-Mobile is a DELAWARE corporation with its headquarters located in Bellevue, Washington.

9.   Defendant T-Mobile is a nationwide provider of cell phone services and other telecommunication services to consumers and businesses, and operates several retail stores in the State of Illinois and in this district.

10.   John Does 1 through 50 are individuals or entities whose identities are unknown at this time but are expected to be uncovered during discovery, who may be directly or vicariously liable for DCI and T-Mobile's unlawful conduct with respect to Plaintiff.

## FACTS

11.     Plaintiff is a subscriber and user of the cell phone service with telephone number ending in 3846 ("3846 cell phone").

12.     During the years 2016 and 2017, plaintiff received several calls on his 3846 cell phone from the following numbers which have been identified as phone numbers used by DCI at the time of the calls:

    (A)     312-637-8794

    (B)     312-637-8795

    (C)     312-637-8815

    (D)     312-637-8821

    (E)     312-637-8834

    (F)     312-637-8867

    (G)     312-638-3071

    (H)     312-638-3094

13.     On several of the calls that Plaintiff picked up from above numbers, there was complete silence on the line and the calls were disconnected after a few seconds.

14.     After receiving multiple calls from the above listed numbers, Plaintiff had called each of the number back and the automated voice response identified the called party as Diversified Consultants. Plaintiff did not speak with a live person.

15.     During the month of May 2018, when Plaintiff forwarded some of the above numbers to an attorney for a possible legal action, the attorney came back and said the numbers did not belong to DCI.

16.     Subsequently, on September 14, 2018, Plaintiff called the telephone number 800-771-5361 listed on DCI's website as its main contact number.  The person answering the call said the call is being recorded and confirmed that they had indeed called Plaintiff's 3846 phone number. She also stated that they were looking for Elizabeth Adams.

17.     Calls by defendant DCI to Plaintiff's 3846 cell phone number were wrong number calls.

18.     Plaintiff has been receiving wrong number calls from collection agencies since the year 2010.

19.     The wrong number calls from collection agencies have continued despite Plaintiff informing numerous callers over the years that they are calling a wrong number.

20.     The pattern and timing of calls by collection agencies over the years indicate that Plaintiff is the intended target of the calls even though the callers claim to be looking for someone else.

21.     The timing of the calls from DCI also suggests that Plaintiff was the intended target of DCI's calls.

22.     Several events—including disappearance of Plaintiff's name from his cell phone account around the time the wrong number calls began—indicate Plaintiff was intentionally set up for the wrong number calls.

23.     Persistent calls from collection agencies over the years have been a source of great mental anguish impacting plaintiff's physical health, emotional health, sense of privacy, sense of security, enjoyment of life, and his ability to work.

24.     Shortly after Plaintiff began searching for attorney in the year 2014 to help stop the calls from collection agencies, there began attempts to intimidate him.

4

25.     Some of the intimidation attempts were accompanied by signals that the perpetrators are law enforcement.

26.     Documents produced confidentially by other collection agencies during discovery indicate to Plaintiff that the wrong number calls were likely part of a corrupt scheme to frame him.

## FACTS REGARDING DCI'S DIALING EQUIPMENT

27.     The TCPA defines Automatic Telephone Dialing System ("ATDS") as:

"equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. §227(a)(1)

28.     During the year 2016 and 2017, DCI had registered one or more of its dialing equipment with the Public Utility Commission of Texas ("PUC") as Automatic Dial Announcing Device ("ADAD"). **Exhibit 1 – DCI ADAD Registration**.

29.     The PUC defines ADAD as:

"Any automated equipment used for telephone solicitation or collection that: (A) is capable of storing numbers to be called, or has a random or sequential number generator capable of producing numbers to be called; and (B) alone or in conjunction with other equipment, can convey a prerecorded or synthesized voice message to the number called without the use of a live operator." (**Exhibit 2 – PUC Instructions for ADAD Permit – Definitions)**

30.     The definitions of ADAD and ATDS raise the possibility that the ADAD used by DCI during the years 2016 or 2017 was also ATDS for the purpose of TCPA.

## FACTS REGARDING T-MOBILE'S ROLE

31.     Plaintiff purchased a new cell phone and cell phone service plan from T-Mobile in the year 2009. The new phone and service were activated by the T-Mobile store employee.

32.     Plaintiff was assigned the telephone number ending in 3846 by T-Mobile and the service was activated in his name.

33.     A few weeks after Plaintiff began receiving wrong number calls from collection agencies in 2010, Plaintiff placed a call to T-Mobile customer service to inquire out if there was a way he could block the callers. During that call, the T-Mobile customer service representative informed Plaintiff that there was no name on his account.

34.     During the years 2010 through 2015, Plaintiff visited several T-Mobile stores and asked the sales persons or store managers if they had the ability to remove a name from an account. They all said no. They all said they the system does not allow them to do that, and that they have to enter a name.

35.     It appears the name was likely removed by T-Mobile information technology department by bypassing the standard applications available to T-Mobile store employees and others which did not allow the name to be removed from an account.

36.     In January 2017, in response to a subpoena by Plaintiff in another case, T-Mobile produced subscriber record that showed that the phone number ending in 3846 was assigned to a subscriber named Elizabeth Adams during the period September 11, 2008 through October 9, 2009.

37.     The T-Mobile subscription record for Elizabeth Adams appears to be a fake one. Telephone service providers were required to age the disconnected numbers for ninety (90) days before reusing the numbers.

6

38.    In the year 2009, it appears it used to take about one (1) day to transfer service from one provider to another while retaining the same number. It appears T-Mobile created the fake record to make it look like the number was transferred and was not a new service.

39.    Many of the collection agency callers also appeared to be tracking Plaintiff's 3846 cell phone in real time—information that callers could have received only from T-Mobile or law enforcement.

40.    T-Mobile misconduct did not end in 2009 or 2010 with the removal his name from the account or creation of fake record of previous subscriber; T-Mobile continued to disseminate false caller ID information for Plaintiff's 3846 cell phone number as late as last year.

41.    T-Mobile is partially responsible for hundreds of wrong number calls that Plaintiff has received over the past ten (10) years.

## COUNT I: TCPA VIOLATION

42.    Plaintiff incorporates preceding paragraphs 1 through 41 here.

43.    The TCPA 47 U.S.C. § 227(b)(1)(A)(iii) makes it illegal to autodial calls to cell phones using an Automatic Telephone Dialing System ("ATDS") without the prior express consent of the called party. It states, in relevant parts:

**(b) Restrictions on use of automated telephone equipment**

**(1) Prohibitions**

**It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automated telephone dialing system or an artificial or prerecorded voice ….**

> **(iii)** **To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call….**

44.     Calls by defendant DCI to Plaintiff's 3846 cell phone number were wrong number calls—DCI did not have Plaintiff's prior express consent to autodial calls to his 3846 cell phone.

45.     On several of the calls that Plaintiff had picked up, Plaintiff encountered complete silence on the line for several seconds. This phenomenon is known as "dead air" and is usually associated with automatic. The "dead air" occurs when a call receiver picks up the call dialed by an automatic dialer but no live agent is available at the caller's end to receive that call.

46.     On information and belief that defendant DCI had dialed unauthorized calls to plaintiff's 3846 using an ATDS, defendant DCI violated the TCPA 47 U.S.C. §227(b)(1)(A)(iii).

47.     The TCPA violations are punishable under 47 U.S.C. §227(b)(3):

> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that state –**
>
> > **(A)** **an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B)** **an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C)** **both such actions.**
>
> **If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

WHEREFORE, plaintiff respectfully seeks judgment in favor of himself, awarding:

(A)     Statutory damages of $500 for each violation of TCPA,

(B)     Actual damages that are in excess of statutory damages,

(C)     Costs of litigation and attorney's fees,

(D)     All other proper relief.

## COUNT II: WILLFUL OR KNOWING VIOLATION OF TCPA

48.     Plaintiff incorporates preceding paragraphs 1 through 47 here.

49.     On information and belief that DCI had placed autodialed calls to Plaintiff's 3846 cell phone using an ATDS knowing it did not have prior express consent to autodial calls to that number, defendant DCI willfully and knowingly violated the TCPA.

WHEREFORE, plaintiff respectfully seeks judgment in favor of himself, awarding:

(E)     Statutory damages of $1500 for each willful and knowing violation of TCPA,

(F)     Treble actual damages that are in excess of statutory damages,

(G)     Costs of litigation and attorney's fees,

(H)     All other proper relief.

## COUNT III: INTRUSION UPON SECLUSION

50.     Plaintiff incorporates preceding paragraphs 1 through 49 here.

51.     On information and belief that DCI had knowingly placed wrong number calls to Plaintiff's 3846 cell phone number.

52.     On information and belief that a creditor or some other third party had placed the debt account with DCI and instructed DCI to call Plaintiff's 3846 cell phone number.

53.     On information and belief that the purpose of the calls was to harass Plaintiff.

WHEREFORE, plaintiff respectfully seeks judgment in favor of himself, awarding:

(A)     Actual damages,

(B)     Punitive damages,

(C)     Costs of litigation and attorney's fees,

(D)     All other proper relief.

## COUNT IV: RICO – WIRE FRAUD

54.     Plaintiff incorporates preceding paragraphs 1 through 53 here.

55.     On information and belief that DCI had knowingly placed wrong number calls to Plaintiff's 3846 cell phone number.

56.     On information and belief that DCI profited from making the calls because it was paid for making the calls.

57.     On information and belief that the true purpose of the calls was to harass, intimidate, frame, or extort Plaintiff.

WHEREFORE, plaintiff respectfully seeks judgment in favor of himself, awarding:

(A)     Actual damages,

(B)     Treble actual damages,

(C)     Punitive damages,

(D)     Costs of litigation and attorney's fees,

(E)     All other proper relief.

## COUNT V: CONSPIRACY

58.     Plaintiff incorporates preceding paragraphs 1 through 57 here.

59.     On information and belief that T-Mobile or its employees deliberately removed Plaintiff's name from his 3846 cell phone account.

60.     On information and belief that T-Mobile or its employees created a fake subscription account in the name of Elizabeth Adams for the period immediately preceding the date Plaintiff's subscription began to make it appear that Plaintiff's subscription was simply a transfer from one service provider to another and continuation of the same service.

61.     On information and belief that T-Mobile or its employees falsified caller ID information associated with his 3846 cell phone number and disseminated the false caller ID information to third parties.

62.     On information and belief that T-Mobile or its employees unlawfully relayed tracking information regarding Plaintiff's 3846 cell phone in realtime or near realtime to third parties over the past ten (10) years.

63.     On information and belief that T-Mobile or its employees unlawfully provided Plaintiff's 3846 cell phone usage information to third parties over the past ten (10) years.

64.     On information and belief that T-Mobile or its employees carried out these acts as part of a corrupt scheme in which they were active participants.

65.     On information and belief that T-Mobile or its employees carried out these acts at the instructions of a third-party who paid them for these actions.

66.     On information and belief that the purpose behind these actions was to harass, intimidate, frame, or extort Plaintiff.

67.     On information and belief that the calls by DCI were part of the same scheme to harass, intimidate, frame, or extort Plaintiff.

WHEREFORE, plaintiff respectfully seeks judgment in favor of himself, awarding:

(A)     Actual damages,

(B)     Punitive damages,

(C)     Costs of litigation and attorney's fees.

(D)     All other proper relief.

Dated: July 13, 2020.

Respectfully Submitted,

/s/ Ashok Arora_____

Ashok Arora, Pro Se

869 E Schaumburg Rd 217

Schaumburg, IL 60194

Tel: 224-622-3846

# Exhibit 1

**Diversified Consultants, Inc.'s (DCI)**

**Automatic Dial Announcing Device (ADAD) Registration**

**with Public Utility Commission of Texas (PUC)**

## Exhibit 1 – DCI's ADAD Registration with PUC

ADAD Report                                      http://www.puc.texas.gov/industry/communications/directories/adad/repo...



**Public Utility Commission of Texas**

ADAD Report

**DIVERSIFIED CONSULTANTS INC**

Permit No: 070122

**Type:** ADAD
**Permit Approved Date:** 3/28/2007
**Date Last Renewed:** 3/28/2018

**DBA Names**

No DBA Records

**Contact Information**

Company / Physical  (Mailing Address)
DIVERSIFIED CONSULTANTS INC
MAVIS PYE
VP OF COMPLIANCE
10550 DEERWOOD PARK BLVD
SUITE 309
JACKSONVILLE,FL 32256
**Web:** www.dcicollect.com
**Email:** info@dcicollect.com
**Phone:** 904-247-5500
**Toll Free:** 800-771-5361
**Fax:** 904-247-0660

ADAD Physical Address
DIVERSIFIED CONSULTANTS INC
MAVIS PYE
10550 DEERWOOD PARK BLVD
SUITE 309
JACKSONVILLE,FL 32256
**Email:** mavis@dcicollect.com
**Phone:** 904-694-3141
**Toll Free:** 800-771-5361
**Fax:** 904-247-0660

ADAD Physical Address
DIVERSIFIED CONSULTANTS INC
MAVIS PYE
10550 DEERWOOD PARK BLVD
SUITE 309
JACKSONVILLE,FL 32256
**Email:** mavis@dcicollect.com
**Phone:** 904-694-3141
**Toll Free:** 800-771-5361
**Fax:** 904-247-0660

**Reports**

2018
**ADAD Annual Report**
**Submitted:** 1/12/2018
**Waiting For Approval:** 1/12/2018

2017
**ADAD Annual Report**
**Submitted:** 1/19/2017
**Approved:** 12/5/2017

2015
**ADAD Annual Report**
**Submitted:** 11/3/2015
**Approved:** 11/18/2015

2014
**ADAD Annual Report**
**Submitted:** 3/3/2014
**Approved:** 11/25/2014

2013
**ADAD Annual Report**
**Submitted:** 4/11/2013
**Approved:** 4/16/2013

2012
**ADAD Annual Report**
**Submitted:** 11/26/2012
**Approved:** 3/19/2013

2011
**ADAD Annual Report**
**Submitted:** 11/1/2011
**Approved:** 12/12/2011

2010
**ADAD Annual Report**
**Submitted:** 11/10/2010
**Approved:** 11/18/2010

2009
**ADAD Annual Report**
**Submitted:** 11/9/2009
**Approved:** 11/18/2009

2008
**ADAD Annual Report**
**Submitted:** 1/15/2008
**Approved:** 11/6/2008

End Report

# Exhibit 2

**Public Utility Commission of Texas (PUC)**

**Instructions for Automatic Dial Announcing Device (ADAD)**

**Permit**



Pursuant to PUC SUBSTANTIVE RULE § 26.125

## *Instructions* for Application for a Texas Permit to Operate an Automatic Dial Announcing Device (ADAD)

**General Instructions**

**Permit Required**

A person may not use an ADAD to make a telephone call in which the device plays a recorded message when the connection is completed unless the person has a permit.  A permit is required for an ADAD that is used to make a telephone call that originates or terminates in the state of Texas.

**Definitions**

★ *ADAD* – any automated equipment used for telephone solicitation or collection that (1) is capable of storing telephone numbers to be called or has a random or sequential number generator capable of producing numbers to be called and (2) alone or in conjunction with other equipment, can convey a prerecorded or synthesized voice message to the number called without the use of a live operator.

★ *Telephone Solicitation* – to make an unsolicited call.

**New Permit procedures**

New ADAD permit seekers are required to submit the Texas Permit to Operate an Automatic Dial Announcing Device (ADAD) application.  New ADAD permit seekers must submit a $50 fee (a check made out to the Public Utility Commission of Texas) with each new ADAD permit application.  An ADAD permit is valid for one year after its date of issuance.  New ADAD permit requests shall be made by completing the form approved by the Commission, which shall be verified by oath or affirmation of the registering party.  Permit application forms may be obtained from the Central Records division of the Public Utility Commission of Texas or downloaded from the Commission website at www.puc.texas.gov.  Subject to the Commission's Procedural Rules, the completed permit form should be filed with

Public Utility Commission of Texas
Attention: Central Records
1701 N. Congress Avenue
P.O. Box 13326
Austin, Texas 78711-3326

Submit the original and 3 copies of the form (not the instructions).

**Renewal Permit procedures**

**A permit approved by the PUC is valid for one year after its date of issuance.**  In order to continue registration, a permit holder must submit an ADAD permit renewal form along with a $15 renewal fee which must be filed at least 90 days prior to the expiration date of the current ADAD permit.  Failure to timely file an ADAD renewal form will render the renewal application invalid.  If a permit is still desired after the renewal expiration date, the ADAD permit holder will have to submit a new ADAD permit application along with the $50 permit fee instead of the $15 renewal fee.  Renewal permit requests shall be made by using the ADAD renewal application that can be found on the Commission website at https://www.puc.texas.gov/portal/PortalHelp.aspx.