THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ASHOK ARORA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20 C 4113 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| DIVERSIFIED CONSULTANTS, INC., | ) | |
| et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed the instant lawsuit alleging that since approximately 2010 he has received a series of wrong-number calls on his cell phone by collection agencies. Plaintiff contends that the Defendants made or facilitated these wrong-number calls via autodial calls. Defendant T-Mobile USA, Inc. (hereafter "T-Mobile") moves for dismissal of Plaintiff's First Amended Complaint, or in the alternative to transfer venue. For the reasons below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiff's complaint. Plaintiff alleges that he purchased a cell phone and corresponding service plan from T-Mobile in October of 2009. Plaintiff was randomly assigned a cell phone number ending in 3846, and had his phone activated by a T-Mobile store employee. About three months later, Plaintiff began receiving wrong-number phone calls from collection agencies—Defendants Diversified Consultants, Inc. ("DCI"), FMA Alliance, Ltd ("FMA") and First National Collection Bureau, Inc. ("FNCB")— attempting to collect on various debts, the majority of which asked for an individual named Elizabeth Adams or Elizabeth G. Adams. Despite his best efforts to advise the callers that they

had called the wrong number, Plaintiff received these calls consistently over the next 10 years, averaging over 100 calls per year. Plaintiff describes these constant calls as "absolutely maddening, highly intrusive and highly disruptive." Plaintiff further suspects that he may have been the target of intimidation tactics by unknown law enforcement agencies. Plaintiff alleges that sometime after August 2014, he noticed individuals tailing him whenever he left his home, and that he started receiving bills for different persons at his residence. Plaintiff attempted to contact various law firms to assist with resolving these issues but was unable to find an attorney able to help him.

With respect to T-Mobile, Plaintiff alleges that his phone and service plan were purchased and activated by a T-Mobile store employee in October of 2009. A few weeks after he started receiving these wrong-number calls, Plaintiff called a T-Mobile customer service line to determine if there was a way to block the calls, but the customer service line told him that his name was not on the account. From 2010 to 2015, Plaintiff visited multiple T-Mobile stores to ask salespersons or store managers if they had the ability to remove an individual's name from an account, to which they responded no. Based on these responses, Plaintiff believes that a "T-Mobile back office employee—such as a database administrator or a computer programmer in the IT department" likely removed his name from the account. Plaintiff further alleges that T-Mobile disseminated false caller ID information for Plaintiff's cell phone number, and that T-Mobile created a fake record to make it appear as if a number from MetroPCS (an independent company) was transferred to T-Mobile.

Plaintiff filed his original complaint in this case against DCI, T-Mobile, and various John Doe defendants under federal and state laws. On January 11, 2020, T-Mobile filed a motion to dismiss or in the alternative to transfer venue. [19]. On February 1, 2020, Plaintiff filed a First

Amended Complaint [22] adding FMA and FNCB as party-defendants. Plaintiff's First Amended

Complaint contains the following counts:

(1)     Telephone Consumer Protection Act (hereafter "TCPA") Violation against DCI;
(2)     Willful or Knowing Violation of TCPA against DCI;
(3)     Intrusion Upon Seclusion against DCI;
(4)     TCPA Violation against FMA;
(5)     Willful or Knowing Violation of TCPA against FMA;
(6)     Intrusion Upon Seclusion against FMA;
(7)     TCPA Violation against FNCB;
(8)     Willful or Knowing Violation of TCPA against FNCB;
(9)     Intrusion Upon Seclusion against FNCB;
(10)    Fair Debt Collection Practices Act Violation against FNCB;
(11)    Civil Conspiracy against T-Mobile;
(12)    Hate Crime against T-Mobile.

Ten days after filing his First Amended Complaint, Plaintiff filed a response to

Defendant's motion to dismiss[1]. [23]. On February 16, 2020, T-Mobile filed a motion to dismiss

Plaintiff's First Amended Complaint, or in the alternative to transfer venue [24], which set forth

the same basic arguments as the prior motion to dismiss. Plaintiff filed his response to this

motion on February 22, 2020 [26]; Defendant's reply was filed on March 16, 2020 [28].

Prior to Plaintiff filing his initial complaint, Defendant DCI filed a voluntary petition on

April 11, 2020, for relief under Chapter 11 of United States Bankruptcy Code in the Bankruptcy

Court for the Middle District of Florida, Jacksonville Division.[2] On June 17, 2020 the DCI

---

[1] Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure provides for an amended pleading as a matter of course "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Plaintiff filed his First Amended Complaint within 21 days after Defendant's filed their initial motion to dismiss. *Compare* [19] *with* [22]. Therefore, Plaintiff's First Amended Complaint was filed as a matter of course within the time frame set out by Rule 15(a)(1)(B). In light of the amended pleading and subsequent motion to dismiss briefing, Defendant's first motion to dismiss or in the alternative transfer venue [19] is denied as moot.

[2] The Court can take judicial notice of public records, including public records filed in other lawsuits, without converting a motion to dismiss into one for summary judgment. *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994). Accordingly, the Court takes judicial notice of the pending bankruptcy case involving Defendant DCI, currently pending in the Middle District of Florida as *In re: Diversified Consultants, Inc.*, Case No. 3:20-bk-01311-JAF.

bankruptcy was converted from a Chapter 11 reorganization to a Chapter 7 liquidation bankruptcy. On September 15, 2020, the bankruptcy court entered an order that, among other things, enjoined any person from pursuing a claim under the TCPA or Federal Debt Collections Practices Act in any other forum, and instead relegated those parties to filing a general unsecured claim in the pending bankruptcy action. *See* [18]. Plaintiff filed an unsecured claim in the DCI bankruptcy proceeding on November 13, 2020 for an amount of $33,000. *In re: Diversified Consultants, Inc.*, Case No. 3:20-bk-01311-JAF, Official Claims Register, Claim No. 54 (Bankr. M.D. Fla. Nov. 13, 2020).

## LEGAL STANDARD

The Court may dismiss a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the notice-pleading requirements of the Federal Rules of Civil Procedure, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the factual allegations in the complaint and draws permissible inferences in favor of the non-movant. *Boucher v. Fin. Sys. of*

4

*Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations "are not entitled to be assumed true," nor are legal conclusions. *Iqbal*, 556 U.S. at 680-81 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement").

## DISCUSSION

Defendant T-Mobile argues three grounds for dismissal: (1) this Court lacks subject-matter jurisdiction over Plaintiff's claims because the automatic stay in DCI's pending bankruptcy action divests this Court of jurisdiction, (2) Plaintiff's amended complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, and (3) in the alternative, this case should be transferred to the Middle District of Florida where DCI's pending bankruptcy action is located. The Court addresses each argument in turn.

### I. Subject-Matter Jurisdiction

Because T-Mobile argues that this Court lacks subject-matter jurisdiction over the claims in this case, the Court addresses this point first. Defendant asserts that because DCI is currently a debtor in a pending bankruptcy action, the automatic stay under 11 U.S.C. § 362 divests this Court of subject-matter jurisdiction over Plaintiff's claims. Section 362 of the Bankruptcy Code provides for an automatic stay of litigation, lien enforcement, and other actions, that would affect or interfere with property of the debtor or the bankruptcy estate upon the filing of a bankruptcy petition. 11 U.S.C. § 362. The automatic stay is one of the fundamental protections of the Bankruptcy Code and gives the debtor "a breathing spell from his creditors." *See* H.R. Rep. No. 595, 95th *361 Cong., 1st Sess., *reprinted in* 1978, U.S. Code Cong. & Admin. News, 5787, 6296–7. The Bankruptcy Code, however, permits creditors to obtain relief from the automatic

stay if their interest would be harmed by its continuation. *See In re Kingsley*, 161 B.R. 995, 997 (Bankr. W.D. Mo. 1994).

Defendant contends that Plaintiff's amended complaint is void because it was filed in violation of the automatic stay in the DCI bankruptcy proceeding. In response, Plaintiff asserts that it is his intention to seek damages for all his claims against DCI from T-Mobile and to offset any amount received from DCI in the valuation of his claim against T-Mobile. Plaintiff further argues that DCI is not a necessary party to determine whether T-Mobile participated in a conspiracy and that his claim against T-Mobile should not be precluded from moving forward.

To start, Plaintiff's contention that DCI is not a necessary party or that he will offset any amounts received is not well-taken. DCI is a named defendant in this case, and Plaintiff's filing of this case after the initiation of the DCI bankruptcy proceeding clearly violates the automatic stay provision as to the claims against DCI. Furthermore, Plaintiff failed to obtain an exemption from the bankruptcy court to proceed with the present action. This violation, however, does not necessarily speak to the viability of the claims against the other co-defendants who are not DCI.

The gist of T-Mobile's argument is that if Plaintiff's First Amended Complaint is void, then the Court lacks subject-matter jurisdiction over all claims in this case, including those claims against DCI's co-defendants. But this argument ignores two important principles. The first is that the automatic stay does not concern jurisdiction. *Matter of Anderson*, 917 F.3d 566, 572 (7th Cir. 2019). Rather, section 362 operates as a stay, but does not establish exclusive jurisdiction over any matter that is affected by the stay. *Id.*

Second, "the automatic stay provisions of Section 362(a) operate only in favor of the bankrupt debtor[.]" *Pitts v. Unarco Industries, Inc.*, 698 F.2d 313, 315 (7th Cir. 1983). In *Pitts v. Unarco*, for example, one of the co-defendants made essentially the same argument that T-

6

Mobile makes here: "that because [one of the] co-defendant[s]…filed its Petition for

Reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978, Section 362 of the

Bankruptcy Code automatically suspends all further proceedings against all parties to th[e]

appeal." *Id.* at 314. The Seventh Circuit rejected this argument, and therefore so must this Court.

*Id.*; *see also In re Mid-City Parking, Inc.*, 332 B.R. 798, 806-07 (Bankr. N.D. Ill. 2005) (in

determining the application of the automatic stay, "one must disaggregate all of the complaints,

counterclaims, cross-claims, third-party claims, and motions for Rule 11 sanctions that are part

of the lawsuit").[3] Because T-Mobile and the remaining co-defendants (other than DCI) are not

debtors in a bankruptcy proceeding, the Court retains subject-matter jurisdiction under 28 U.S.C.

§1331 and 28 U.S.C. § 1367 over the claims against those defendants.

## II. Failure to State a Claim Under Rule 12(b)(6)

T-Mobile also argues that notwithstanding the subject-matter jurisdiction issue, Plaintiff

fails to state a claim for relief against it. Count 11 (Civil Conspiracy) and Count 12 (Illinois Hate

---

[3] It is the overwhelming consensus among the circuits, as in the Seventh Circuit, to hold that the automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor. *See Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir. 1983) ("[i]t is universally acknowledged that an automatic stay of proceedings accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the ... debtor"); *see also Austin v. Unarco Industries, Inc.*, 705 F.2d 1, 4–5 (1st Cir. 1983), *cert. dismissed*, 463 U.S. 1247 (1983); *Teachers Ins. & Annuity Ass'n. v. Butler*, 803 F.2d 61, 65 (2nd Cir. 1986); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 126–27 (4th Cir. 1983); *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983); *Clay v. Johns–Manville Sales Corp.*, 722 F.2d 1289, 1290–91 (6th Cir. 1983), *cert. denied*, 467 U.S. 1253 (1984); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984); *In re Lessig Const., Inc.*, 67 B.R. 436 (Bankr. E.D. Pa. 1986) (in adversarial action brought by debtor in bankruptcy court, defendant must obtain relief from automatic stay before asserting any counterclaim against debtor); *Action Drug Co., Inc. v. Overnite Transp. Co.*, 724 F. Supp. 269 (D. Del. 1989) (where plaintiff-debtor enters bankruptcy, defendant may not assert counterclaim against bankrupt plaintiff), *aff'd without op.*, 902 F.2d 1558 (3d Cir.1990); *but see A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (automatic stay may be extended to non-bankrupt codefendants in unusual circumstances), *cert. denied*, 479 U.S. 876 (1986).

Crime) are the only claims directed at T-Mobile. For the reasons stated below, the Court agrees and dismisses Counts 11 and 12 without prejudice.

### A. Count 11: Civil Conspiracy

Plaintiff's Count 11 is an Illinois tort claim of civil conspiracy against T-Mobile. Under Illinois law, the elements of a cause of action for civil conspiracy are: "(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004). The function of a conspiracy claim is to extend tort liability from the active wrongdoer to wrongdoers who may have only planned, assisted, or encouraged the active wrongdoer. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994). However, "[t]he mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 23 (1998).

A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort. W. Prosser, Torts § 46, at 293 (4th ed. 1971); *see also Lasher v. Littell*, 202 Ill. 551 (1903); *Illinois Traffic Court Driver Improvement Educational Foundation v. Peoria Journal Star, Inc.*, 144 Ill. App. 3d 555 (1986). Consequently, the essence of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement. W. Prosser, Torts § 46, at 293 (4th ed. 1971). "It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable." W. Prosser, Torts § 46, at 243 (4th ed. 1971).

Defendant argues that Plaintiff fails to state a claim for civil conspiracy because he fails to allege who the co-conspirators were, what relationship and agreement they allegedly made, when this agreement was made, or the objectives of the agreement. Defendant also argues that Plaintiff fails to allege any unlawful acts by T-Mobile, and that Plaintiff's allegations do not meet Rule 9's specificity requirement. Plaintiff, on the other hand, responds that circumstantial evidence demonstrates a conspiracy to make wrong number collection calls to Plaintiff's cell phone number, and points to allegations (¶¶18-34, 63-75) in the First Amendment Complaint. Plaintiff further states that he expects to uncover an agreement between T-Mobile and the collection agencies through discovery, and that he has plausibly alleged tortious conduct of T-Mobile in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505.

The Court agrees with Defendant. First, Plaintiff fails to identify any agreement between the various defendants that demonstrates, or even suggests, an intent to conspire against Plaintiff. Plaintiff's response casts about wildly and incoherently, speculating that T-Mobile could have been a participant in various schemes such as a "criminal enterprise involving insiders from T-Mobile, collection agencies, and others[,]" or a member of a plan orchestrated by law enforcement where T-Mobile played some unspecified role and "agreed to do its part." [Dkt. 26 at ¶11]. These conclusive statements are bereft of any suggestions that T-Mobile was in league with any of the other co-defendants to conspire against the Plaintiff. As a result, these vague assertions are insufficient to meet the plausibility requirement set forth by *Twombly*, 550 U.S. 544 and *Iqbal*, 556 U.S. 662. *See, e.g.*, *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009); *cf. Geinosky v. City of Chicago*, 675 F.3d 743, 749 (7th Cir. 2012) (holding that allegations of a

"pattern of harassment by several officers over a period of months" was sufficient to allege a claim for conspiracy).

To be fair, Plaintiff is correct insofar as he is not required to plead with complete particularity all details of a conspiracy or the exact role of each defendant in a conspiracy. *See Adcock*, 164 Ill 2d. at 66. A conspiracy, by its very nature, is "purposefully shrouded in mystery." *Id.* Plaintiff is also correct that he does not need to allege that a conspirator committed a tortious act so long as he alleges that at least one of the conspirators committed a tortious act, and that an agreement between the co-conspirators assisted or encouraged the wrongdoer. *Id.* at 64. At a minimum, however, the allegations must provide some form or scope to the conspiracy. *Ryan v. Mary Immaculate Queen Center*, 188 F.3d 857, 860 (7th Cir. 1999). But Plaintiff's allegations do not provide any form or scope with respect to his contention that a conspiracy existed between T-Mobile and the other defendants, and nothing that would tether T-Mobile to a common scheme to perpetuate harassment or fraud against Plaintiff.

Second, Plaintiff's contention that he intends to uncover an agreement between T-Mobile and the other co-defendants through discovery does not cure the defects in his First Amended Complaint. Federal litigation is not a tool to be used as a fishing expedition. *See Hadley v. Peters*, 70 F.3d 117, 1995 U.S. App. LEXIS 37571, 1995 WL 675990, at *10 (7th Cir. 1995). Plaintiff must present a plausible claim and some connection between the various defendants to proceed on his conspiracy claim.

Third, the Court addresses Plaintiff's argument that he has alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (hereafter "IFCA"). To start, the Court notes that this theory of relief is not included in the First Amended Complaint and was only first identified in Plaintiff's response to Defendant's motion

10

to dismiss. But even accepting that Plaintiff intended to allege a violation of this act, and being cognizant of Plaintiff's *pro se* status, the Court finds that Plaintiff's allegations do not establish a violation of the IFCA.

The elements of a claim for violation of the ICFA are: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *CHS Acquisition Corp. v. Watson Coatings*, Inc., No. 17-CV-4993, 2018 U.S. Dist. LEXIS 140555, 2018 WL 3970137, at *12 (N.D. Ill. Aug. 20, 2018) (quoting *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015)). Claims of deception under the ICFA are analyzed under the heightened pleading standard of Rule 9. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018); Fed. R. Civ. P. 9. "A practice is deceptive 'if it creates a likelihood of deception or has the capacity to deceive.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (quoting *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001)). To determine the likelihood of deception, courts apply a "reasonable consumer" standard. *Id.*

Here, Plaintiff has not alleged a deceptive practice by T-Mobile that occurred during trade or commerce. The only allegations that Plaintiff makes is that his name was removed from the cell phone account and that his caller ID information identified another individual. But these actions do not amount to a deceptive practice that T-Mobile engaged in to mislead the Plaintiff or other consumers. In addition, Plaintiff's allegations in his First Amended Complaint regarding T-Mobile's response to a subpoena in a separate case, and his allegations regarding the IRS's retention requirements, have no relevance to this proceeding and are insufficient to state a cause of action against Defendant T-Mobile. Accordingly, Count 11 is dismissed without prejudice.

11

**B. Count 12: Illinois Hate Crime**

Plaintiff's Count 12 is a claim of a hate crime committed against Plaintiff by T-Mobile.

The Illinois Hate Crime statute, at 720 ILCS 5/12-7.1, provides that:

> (a) A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, regardless of the existence of any other motivating factor or factors, he or she commits assault, battery, aggravated assault, intimidation, stalking, cyberstalking, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action, disorderly conduct, transmission of obscene messages, harassment by telephone, or harassment through electronic communications as these crimes are defined in Sections 12-1, 12-2, 12-3(a), 12-7.3, 12-7.5, 16-1, 19-4, 21-1, 21-2, 21-3, 25-1, 26-1, 26.5-1, 26.5-2, paragraphs (a)(1), (a)(2), and (a)(3) of Section 12-6, and paragraphs (a)(2) and (a)(5) of Section 26.5-3 of this Code, respectively.

Plaintiff invokes 720 ILCS 5/26-5.2, which provides that "[a] person commits harassment by telephone when he or she uses telephone communication for any of the following purposes:

> (1) Making any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent with an intent to offend;
> (2) Making a telephone call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the called number;
> (3) Making or causing the telephone of another repeatedly to ring, with intent to harass any person at the called number;
> (4) Making repeated telephone calls, during which conversation ensues, solely to harass any person at the called number;
> (5) Making a telephone call or knowingly inducing a person to make a telephone call for the purpose of harassing another person who is under 13 years of age, regardless of whether the person under 13 years of age consents to the harassment, if the defendant is at least 16 years of age at the time of the commission of the offense; or
> (6) Knowingly permitting any telephone under one's control to be used for any of the purposes mentioned herein.

Turning to Plaintiff's allegations, the Court finds that Plaintiff fails to state a claim against T-Mobile under this subsection of the Illinois Criminal Code. Plaintiff's allegations do not demonstrate any inappropriate action by T-Mobile that was taken by reason of Plaintiff's actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or

mental disability, or national origin. Rather, Plaintiff's allegations consist mostly of incoherent statements that speculate about various secretive plots meant to intimidate or harass him that may or may not have involved unknown law enforcement officials. Yet none of these allegations relate to any action by Defendant T-Mobile. The only allegations attributable to T-Mobile are that an employee within the company removed Plaintiff's name from his account for the cell phone number ending in 3846. But even if true, this is insufficient to state a claim under the Illinois Hate Crime statute. Accordingly, Count 12 is dismissed without prejudice.

**III. Transferring Venue**

Finally, T-Mobile asks this Court, in the alternative, to transfer this case to the Middle District of Florida where DCI's bankruptcy case is currently pending. Defendant argues that the interest of justice compels a transfer of this case. Plaintiff, on the other hand, argues that transferring this case is unwarranted because a transfer will only delay resolution of Plaintiff's claim against the other defendants and that, given that DCI's liabilities far exceed its assets, Plaintiff may only recover a small fraction of what he believes is owed for his claims against DCI. For the reasons detailed below, the request to transfer is denied.

Although neither party identifies it, there is currently a split of authority whether 28 U.S.C. §1412 or 28 U.S.C. §1404(a) governs the transfer of "related-to" actions, such as this one, to a district where a related bankruptcy case is pending. "A proceeding is *related to* a bankruptcy, 'if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." *City of Liberal, Kansas v. Trailmobile Corp.*, 316 B.R. 358, 361 (Bank. D. Kan. 2004) (emphasis added) (internal citations omitted). Section 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of

justice or for the convenience of the parties." 28 U.S.C. §1412. Some courts read this statute as authorizing transfer of only cases or proceedings brought under title 11. *See, e.g.*, *Grand Vehicle Works Holdings Corp. v. Transamerica Business Capital Corp.*, Case No. 03-C-679, 2003 U.S. Dist. LEXIS 17991, 2003 WL 22317389, at *1-2 (N.D. Ill. 2003); *Eurochem N. Am. Corp. v. Ganske*, No. 18-cv-16-slc, 2020 U.S. Dist. LEXIS 238422; 2020 WL 7447136 (W.D. Wis. Dec. 18, 2020). In other words, section 1412 would only apply to a bankruptcy action that was originally brought under title 11; whereas section 1404(a) would govern the transfer of a non-bankruptcy action. Other courts have read section 1412 more expansively: holding that it can authorize transfer of an action that does not arise under title 11 to a pending bankruptcy action. *See Creekridge Capital, Ltd. Liab. Co. v. La. Hosp. Ctr., Ltd. Liab. Co.*, 410 B.R. 623, 628 (D. Minn. 2009); *Dunlap v. Friedman's Inc.*, 331 B.R. 674, 677 (Bankr. S.D.W.V. 2005). Resolution of this issue here is unnecessary, as the Court finds that transfer under either section 1404(a) or 1412 is not warranted. The Court addresses the relevant factors under section 1404(a), although the factors to be considered are the same under both statutes. *See Jackson v. Venture Dept. Stores*, Case No. 98-C-6216, 1998 U.S. Dist. LEXIS 17508; 1998 WL 778057, at *2 (N.D. Ill. Nov. 3, 1998).

Section 1404(a) provides that a federal district court may "for the convenience of the parties and witnesses, [and] in the interest of justice ... transfer any civil action to any other district or division where it might be brought." 28 U.S.C. § 1404(a); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). And though section 1404(a) limits consideration for transfer to three factors—convenience of the parties, convenience of the witnesses, and the interest of justice—district courts have broad discretion in interpreting and weighing these factors, which serve more as analytical guideposts rather than rigid requirements. *See Coffey*, 796

F.2d at 219-20; *Chicago R.I. & P.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955), *cert denied*, 350 U.S. 822 (1955); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The movant bears the burden of establishing that the alternative forum is clearly more convenient. *Coffey*, 796 F.2d at 219-20.

### A. Convenience of the Parties

Turning to the first factor, the Court considers five subfactors related to the convenience of the parties: (1) plaintiff's initial choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses to be called to testify in the case, and (5) the convenience of the parties themselves. *Westminster Investments, LLC v. International Thoroughbred Breeders, Inc.*, Case No. 06-C-6189, 2007 U.S. Dist. LEXIS 32628, 2007 WL 1302974, at *3 (N.D. Ill. May 2, 2007). "The plaintiff's choice of forum is generally entitled to substantial weight, especially when it is the plaintiff's home forum." *Id.* "However, where the plaintiff's choice of forum has a relatively week connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened." *Id.*

Here, the Court finds that the convenience of the parties factor weighs against transfer. The parties do not specifically address the applicable subfactors in their briefing, therefore the Court makes this determination based on the arguments presented and reasonable inferences therefrom. Plaintiff is a citizen of Illinois and he alleges that he received these unwarranted calls while residing in Illinois. None of the Defendants, however, reside or are domiciled in Illinois, and based on the allegations it appears that nearly all of these calls were placed from locations outside of Illinois. The ease of access to sources of proof component is neutral because although Plaintiff resides in Illinois, the Defendants reside in various states outside of Illinois.

15

Realistically speaking though, it is likely more inconvenient for Plaintiff to litigate his claims elsewhere compared to the inconvenience of the Defendants to litigate in this forum. This inconvenience to Plaintiff, however, is somewhat lessened when considering that he has already filed a claim against DCI is the Middle District of Florida and by all accounts appears prepared to litigate in that forum. Overall, the Court finds that the convenience of the parties factor weighs slightly against transfer.

### B. Convenience of the Witnesses

With respect to witnesses, "[the party seeking transfer must specify the key witnesses to be called and establish that the nature and quality of their testimony with respect to the issues in the case warrant the case's transfer." *Westminster*, 2007 WL 1302974, at *4. Again, the parties do not address this factor in the briefing. At a minimum, however, potential witnesses would include the Plaintiff (Illinois), DCI and its employees (Florida), FMA Alliance LTD and its employees (Texas), First National Collection Bureau, Inc. and its employees (Nevada), and potential unknown Joe Doe defendants. As such, the Court finds that the convenience to witnesses factor is neutral.

### C. Interest of Justice

Lastly, the Court must also consider which forum best serves the interest of justice. The interest of justice factor focuses on the efficient administration of the courts and not the merits of the underlying dispute. *Westminster*, 2007 WL 1302974, at *4. "This analysis also includes considerations such as '(1) the speed at which a case will proceed to trial, (2) the court's familiarity with the applicable law, (3) the relation of the community to the occurrence at issue, and (4) the desirability of resolving controversies in their locale.' [] Even where the convenience

of the parties and witnesses may call for a different result, the 'interest of justice' component may be determinative in a particular case." *Id.* (internal citations omitted).

In addition, the Court notes that the existence of related litigation in a transferee court strongly supports a motion to transfer. As the Supreme Court stated in *Continental Grain Co. v. The FBL–585*: "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different district courts leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." 364 U.S. 19, 26 (1960). Indeed, it is a well-settled presumption that "related to" proceedings should be litigated in the "home court[,]" meaning the court where the bankruptcy case is proceeding *See Hohl v. Bastian*, 279 B.R. 165, 177–78 (W.D. Pa. 2002) ("[T]he home court presumption provides that a court in which the bankruptcy case itself is pending is the proper venue for adjudicating all related litigation, including those suits which have been filed in other state or federal courts."); *Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 267 (M.D.N.C. 2001) ("[M]any courts presume that the proper venue for a proceeding related to a bankruptcy case is in the district hearing the bankruptcy case"); *In re Vital Link Lodi, Inc.*, 240 B.R. 15, 19 (Bankr. W.D. Mo. 1999) ("The general rule is that the court where the bankruptcy case is pending is the proper venue for all related proceedings within the court's jurisdiction."); *In re Sudbury*, 149 B.R. 489, 493 (Bankr. N.D. Ohio 1993) (same).

Based on that well-settled principal, the claims against DCI will be stayed. On September 15, 2020, the Bankruptcy Court overseeing DCI's bankruptcy entered an order precluding, barring, and enjoining any person from pursuing a claim under the TCPA or Federal Debt Collections Practices Act in any other forum against DCI. *In re: Diversified Consultants, Inc.*, Case No. 3:20-bk-01311-JAF, Dkt. 90 (Bankr. M.D. Fla. September 15, 2020). But as the subsequent orders of the Bankruptcy Court demonstrate, this order operates as a stay of these

17

claims rather than requiring outright dismissal in those cases. *See, e.g.*, *In re: Diversified Consultants, Inc.*, Case No. 3:20-bk-01311-JAF, Dkt. 106 (Bankr. M.D. Fla. November 2, 2020) (ordering that the automatic stay shall remain in place with respect to creditor's lawsuit against debtor DCI, but permitting other claims against non-debtors to proceed). Therefore, in accordance with the still-active automatic stay, the Court stays the claims against DCI.

Having resolved the issue with the claims against DCI, the Court turns to the remaining factors. First, there is no advantage in terms of speed between this district and the Middle District of Florida. Second, Plaintiff's complaint alleges several federal law violations, which another district court is equally capable of resolving. But Plaintiff also alleges many Illinois common law torts, which this Court is likely more familiar with than a Florida district court. Third, although these claims were brought in federal court as opposed to a state court, there is still some interest in having these claims, particularly the state-law claims, resolved in Illinois rather than Florida. Fourth, Plaintiff obviously has an interest in resolving this case in this district, whereas DCI (and apparently T-Mobile) have an interest in resolving this conflict elsewhere.

In the end, the primary inquiry that the Court must resolve is to determine how Plaintiff's choice of venue presumption stacks up to the home-court presumption for related-to proceedings. In the Court's view, the best course of action is to stay the proceedings against DCI and allow the remaining claims to continue. The consideration afforded to the home-court presumption is lessened here because: (1) the request for transfer is being made by a non-bankrupt co-defendant as opposed to a debtor in bankruptcy, (2) the claims against movant are being dismissed, and (3) the claims against the debtor are being stayed. Furthermore, even if there is some similarity with respect to the alleged conduct of DCI, TCPA and FNCB, the claims against each are factually distinct from each other; meaning that the allegations do not suggest that these various

18

defendants were acting in concert together. As such, staying the proceedings against DCI and allowing the remaining claims to proceed best balances the competing presumptions at play in this situation. Therefore, the request to transfer is denied.

## CONCLUSION

Defendant T-Mobile's motion to dismiss [24] is granted in part and denied in part. Defendant's motion to dismiss based on a lack of subject-matter jurisdiction is denied. Defendant's motion to dismiss based on a failure to state a claim is granted. The Court dismisses Counts 11 and 12 without prejudice. Defendant's motion to transfer is denied. The claims against Diversified Consultants, Inc. (Counts 1, 2, and 3) are stayed. Counsel have filed their respective appearance for Defendants FMA and FNCB. This case is set for an initial status hearing on June 23, 2021 at 9:30 a.m. The parties are directed to file a joint initial status report in accordance with the Court's standing order by June 21, 2021.

**SO ORDERED.**                              **ENTERED:   June 11, 2021**

_____
**JORGE L. ALONSO**
**United States District Judge**